IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEREMY WHITE    . | * | |
| v. | * | Civil Action No.   CCB-21-1180 |
| HOUSING AUTHORITY OF QUEEN ANNE'S COUNTY | * | |

************

## MEMORANDUM

Pending before the court is the defendant's motion to dismiss for judgment on the pleadings, or in the alternative, a motion for summary judgment (ECF 20) in an employment discrimination and retaliation suit brought by plaintiff Jeremy White against defendant Housing Authority of Queen Anne's County ("HAQAC"). Mr. White alleges that HAQAC, his former employer, violated his civil rights by committing various adverse employment actions because of his race; he brings claims under Title VII of the Civil Rights Act of 1964 and 42 U.S. § 1981. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will grant the motion but with leave to amend.

## BACKGROUND

### I.  Mr. White's Employment at HAQAC

Mr. White is a black man who served as the Executive Director of the Housing Authority of Queen Anne's County from August 2016 to November 2019. (ECF 1 ¶¶ 4, 6).[1] HAQAC is a quasi-governmental agency that provides housing and related services to residents of Queen Anne's County, Maryland. (*Id.* ¶ 5). In his role as Executive Director, Mr. White was responsible

---

[1] All facts are drawn from the Complaint (ECF 1).

1

for managing tenant housing and handling HAQAC's finances, which included writing checks to himself signed on behalf of HAQAC. (*Id.* ¶¶ 7-8).

Mr. White states that he maintained good relations with the Board Members and received positive feedback in his performance evaluations. (*Id.* ¶¶ 9-10, 16). In 2017, Mr. White brought to the attention of the Board members evidence of racial disparities with the cost of rent and the speed of response to maintenance requests for units leased by the Board to county residents. (*Id.* ¶ 11). While the Board was initially receptive to Mr. White's proposal to address these disparities, white Board member Richard Cira and County Commissioners Christopher Corchiarino and Mark Anderson (together, "the Commissioners") quickly became hostile to him and any remedial efforts he proposed. (*Id.* ¶¶ 12-13). Mr. White alleges that Mr. Cira sent threatening and harassing emails to him seeking to reverse his policy changes, told him to "shut up," threw papers at him, and bussed in protestors to disrupt meetings regarding the changes. (*Id.* ¶¶ 14-15, 17). Mr. White alleges that, after his rent equity proposal passed in a Board vote, Mr. Cira and the Commissioners continued to harass him. (*Id.* ¶ 20). The Commissioners refused to reappoint a black Board Member, instead replacing him with another white man, Robert Udoff. (*Id.* ¶¶ 19, 22).[2] Together, Mr. Cira and Mr. Udoff prevented Mr. White from engaging in a mold remediation project that Mr. White thought would help disadvantaged tenants. (*Id.* ¶ 23).

After Mr. White filed a complaint with the Department of Housing and Urban Development regarding the mold project, Mr. Cira and Mr. Udoff began "bombarding" Mr. White's office with calls, preventing him from working, told Mr. White not to act on any Board approved resolutions to support equality for minority families, and made verbal threats. (*Id.* ¶¶ 24-

---

[2] It appears, upon preliminary investigation, that the elected County Commissioners (not defendants to this suit), and not the other Board members, are responsible for appointing HAQAC Board members. *See* MD House & Comm. Dev. Code, § 12-302(a) (2016).

25, 27, 28). In 2019, Mr. Cira and Mr. Udoff engaged in finger-pointing, lunging, and throwing paper at Mr. White during meetings. (*Id.* ¶ 29). Mr. White claims that, on one occasion, Mr. Udoff attempted to physically attack him. (*Id.* ¶ 30). Despite his complaining to the Board about this treatment, the Board took no actions regarding Mr. Cira and Mr. Udoff's conduct toward Mr. White. (*Id.* ¶¶ 31-32).

In November 2019, after suffering headaches and a lack of focus, Mr. White took a leave of absence from work per his doctor's recommendation. (*Id.* ¶ 34). Mr. White formally resigned from his employment at HAQAC on November 23, 2019, because he could not continue to withstand the abuse of Mr. Cira, Mr. Udoff, and the Commissioners. (*Id.* ¶ 35). Mr. White claims that, upon resignation, he was owed over $50,000 for compensable accrued leave time and additional retirement contributions, for which he was never paid. (*Id.* ¶¶ 36-41). Instead, Mr. White states that HAQAC reneged on their promise to pay him this compensation and accused him of mishandling funds including those he paid himself for reimbursable job duties. (*Id.* ¶ 42). He adds that, but for his race and decision to oppose discrimination against minority residents, the Commissioners would not have harassed, retaliated, and constructively discharged him. (*Id.* ¶ 43).

## II.     Procedural History

At an unspecified date after his resignation in November 2019, Mr. White submitted a charge with the Equal Employment Opportunity Committee ("EEOC") against HAQAC. (*See* ECF 1-1, EEOC Not. of Right to Sue). On February 23, 2021, the EEOC wrote to Mr. White declining to continue its investigation into the alleged discrimination, giving him notice of his right to sue HAQAC. (*Id.*).

On May 14, 2021, Mr. White filed his complaint against HAQAC. (ECF 1, Compl.). On July 29, 2021, HAQAC filed a motion to dismiss the complaint, or, in the alternative, a motion for summary judgment. (ECF 20). Mr. White, at the time representing himself, filed a response on August 27, 2021 (ECF 23), to which HAQAC replied (ECF 24). Mr. White, who had acquired representation, then filed a surresponse on September 15, 2021 (ECF 26), which was stricken from the record by the court on October 5, 2021. (ECF 28).

On October 19, 2021, Mr. White's counsel moved to file a substitute response to HAQAC's dispositive motion (ECF 29), which HAQAC opposed (ECF 30). On November 18, 2021, the court gave Mr. White leave to file a substitute response and struck Mr. White's pro se response (ECF 23) from the record, giving Mr. White's counsel until December 3, 2021, to file a substitute opposition to the motion to dismiss. Counsel for Mr. White has not filed a substitute response, timely or otherwise. In light of this procedural posture and in the interests of equity and judicial economy, the court will consider the motion for leave to amend made by Mr. White's counsel in the stricken sur-response submitted on September 15, 2021 (ECF 26).

## DISCUSSION

### I. Standard of Review

"A motion for judgment on the pleading under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citation omitted). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must

4

allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).[3]

## II. Administrative Exhaustion

As to the Title VII claims, HAQAC argues that Mr. White asserted different allegations in his charge filed with the EEOC than in his operative complaint, thus failing to properly exhaust the required administrative remedy available to him before bringing suit. *See Nichols v. Comcast Cablevision of MD*, 84 F. Supp.2d 642, 656 (D. Md. 2000), *quoting Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) ("Courts may only exercise jurisdiction over claims encompassed within the administrative charge and claims 'like or related to allegations contained in the charge, or which grow out of such allegations'").

While HAQAC cites to numerous differences and discrepancies allegedly present in Mr. White's EEOC filing when compared to his complaint (*see* ECF 20 at 20-22), neither party has provided the complete EEOC charge to the court. The documents HAQAC references and quotes from, ECF 1-1, is the EEOC dismissal and notice of right to sue, which does not contain

---

[3] While HAQAC titled its initial motion as one, in the alternative, for summary judgment, in its reply it indicates that the motion should treated as one to dismiss. (ECF 24 at 1).

information regarding the alleged discriminatory or retaliatory activity. (*See* ECF 1-1). Therefore, the court cannot make an informed determination on this argument for dismissal.[4]

**III.   Discrimination Claims**

Mr. White brings six counts under Title VII and 42 U.S.C. § 1981 alleging HAQAC violated his civil rights by unlawfully taking an adverse employment action against him on account of his race, through disparate treatment (Counts I and II), hostile work environment (Counts III and IV), and constructive discharge (Counts VII and VIII).

Title VII makes it an "unlawful employment practice for an employer ... to fail or refuses to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). For a Title VII discrimination claim to survive a motion to dismiss, the plaintiff need not plead facts that establish a prima facie case of discrimination. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 507 (2002). Rather, the "ordinary rules for assessing the sufficiency of a complaint" apply. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (*quoting id.* at 511). To meet this standard, a plaintiff must allege facts sufficient to show the adverse employment action was taken because of the plaintiff's protected class. *Id.* at 586. Under § 1981, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

---

[4] 42 U.S.C. § 1981 has no such exhaustion requirement.

As presently drafted, the complaint likely contains sufficient allegations that Mr. White was a member of a protected class, that he was performing his job satisfactorily, that at a certain time one or more members of the Authority engaged in harassing behavior against him, and that he suffered adverse consequences. The complaint does not, however, provide sufficient information to support a claim that these actions were taken because of his race. As in *McCleary*, simply alleging that the defendants' actions were based on race is not enough. 780 F.3d at 585-86. The same is true for the § 1981 claims.

### IV. Retaliation Claims

Mr. White also asserts retaliation claims under Title VII (Count V) and § 1981 (Count VI) Retaliation claims require a plaintiff to prove that: 1) he engaged in a protected activity; 2) the employer took an adverse employment action against him; and 3) a causal connection existed between the protected activity and the asserted adverse action. *Adams v. Giant Food, Inc.*, 225 F. Supp.2d 600, 605 (D. Md. 2002) (citation omitted). A protected activity is either the opposition to an unlawful employment practice or participation in a Title VII investigation, proceeding or hearing. *Id.* For a retaliation claim under 42 U.S.C. § 1981, an employee must prove that "(1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection exists between the protected activity and the asserted adverse employment action*." Williams v. Aluminum Co. of Am.*, 457 F. Supp. 2d 596, 610 (M.D.N.C. 2006) (*citing Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 242 (4th Cir.1997)). While Mr. White identifies specific instances of adverse employment actions, he fails to specifically identify what the protected activity was, when it occurred, and what supports his claim that any of the defendants took action against him because of the protected activity.

### V. Leave to Amend

In his opposition to the motion to dismiss, Mr. White has requested leave to amend any and all of his claims should the court dismiss them. (*See* ECF 26 at 7-8). Federal Rule of Civil Procedure 15(a)(2) instructs courts to freely give leave to file amended pleadings. District courts therefore should liberally allow amendment and deny leave to amend only in cases of prejudice, bad faith, or futility. *See In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). In this case, it is possible that an amended complaint could cure the deficiencies in pleading identified by the court. Granting leave to amend thus will give effect to the "policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Considering also that the court cannot evaluate the administrative exhaustion defense without being provided the EEOC charge, leave to amend Mr. White's various discrimination claims against HAQAC will be granted. If an amended complaint is filed, HAQAC may renew its opposition, including the failure to exhaust.

## CONCLUSION

The court notes its concern over plaintiff's counsel's apparent failure to comply with the deadline for filing a substitute response. It is not clear whether Mr. White will be representing himself going forward. Plaintiff's counsel will be directed to explain her reasons for missing the earlier deadline and to affirm whether she will remain in the case. In addition, for the reasons stated above, HAQAC's motion to dismiss will be granted, but with leave to amend.

A separate order follows.

  __3/31/2022_____                                    ___/S/_____
Date                                                                      Catherine C. Blake
                                                                                United States District Judge